UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

American Family Mutual
Insurance Company,

Civil No. 12-2855 (PAM/FLN)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

John Martin Donaldson,
Todd Richard Patton, and
Jacob Todd Patton,

Defendants.

---

This matter is before the Court on Plaintiff's Motion to Dismiss Defendant John Donaldson's counterclaim. For the reasons that follow, the Motion is granted.

**BACKGROUND**

This case arises out of a single-car accident. On April 10, 2011, Defendant Jacob Patton was driving his father's vehicle with Defendant John Donaldson in the passenger seat. Patton and Donaldson were both 18 years old at the time. Patton had been drinking and was speeding through residential neighborhoods in Lakeville. When police tried to pull him over, Patton led them on a high-speed chase. Patton ultimately crashed the car into a tree and Donaldson was severely injured. At the time of the accident, Patton had both auto insurance and an umbrella policy with Plaintiff American Family Mutual Insurance Company through his father, Defendant Todd Richard Patton. Patton was ultimately charged with two counts

of criminal vehicular operation.

On March 8, 2012, Donaldson sued the Pattons in Dakota County District Court alleging negligence. American Family agreed to defend the Pattons and hired attorney Bruce McLellan to do so. American Family notified the Pattons on November 11, 2011, and July 27, 2012, that it reserved all rights to contest coverage. On November 1, 2012, the eve of trial, McLellon requested a continuance on the grounds that a trial would be unnecessary because Patton was planning to plead guilty and because American Family was poised to file a declaratory judgment action that would resolve the dispute. On November 14, 2012, American Family filed the instant declaratory judgment action, seeking a declaration that there is no coverage under the umbrella policy. Because American Family was now suing its insured, attorney Richard Scattergood replaced McLellon as counsel for the Pattons.

American Family subsequently entered into a Drake-Ryan release with Donaldson in exchange for the auto policy limit of $100,000.[1] Under the agreement, the Pattons were released from all personal liability and the parties agreed that any judgment would only be collectible under the Patton's umbrella policy. Donaldson and the Pattons

---

[1] In a Drake-Ryan release, a plaintiff may "fully release[ ] [a] defendant and his primary liability insurer up to the limits of the primary liability coverage but expressly retain[ ] the right to pursue [his or her] claims against the defendant for additional damages up to the limits of the defendant's excess liability coverage." Stan Koch & Sons Trucking, Inc. v. Great West Cas. Co., 517 F.3d 1032, 1037 n.5 (8th Cir. 2008) (citing Drake v. Ryan, 514 N.W.2d 785, 790 (Minn. 1994)).

later executed a Miller-Shugart [2] agreement under which Donaldson agreed to refrain from collecting a judgment relating to the accident against the Pattons:

> This judgment is explicitly not satisfiable by attachment of nor shall it become a lien upon any real estate, real property owned, or any other owned assets, nor which hereafter may be owned by [the Pattons], and [Donaldson] will take no action and will refrain from any attempt to collect any portion of any judgment or settlement from [the Pattons] personally.

(Duggan Vraa Aff. (Docket No. 42) Ex. B ¶ 12.) The agreement further provides that Donaldson "will only seek to satisfy this judgment from American Family as provided under the personal liability umbrella policy[.]" (Id. ¶ 11.)

Next, Donaldson and the Pattons engaged in arbitration to determine the amount of damages due to Donaldson under the Miller-Shugart agreement. American Family did not take part in the arbitration. On January 2, 2013, the arbitrator issued a $1.25 million award for Donaldson, which is $250,000 in excess of the Pattons' $1 million umbrella policy limit. The parties appear to agree that due to the Miller-Shugart agreement, the Pattons cannot be held responsible for the excess judgment.

This Court previously denied Defendants' Motion to Dismiss, after which Defendants filed their Answers and Counterclaims. Donaldson filed a counterclaim for "Third Party Insurance Bad Faith" claiming that American Family acted in bad faith by allowing the $1.25

---

[2] In a Miller-Shugart agreement, an insured may stipulate to a money judgment in favor of the plaintiff and, in return, the plaintiff releases the insured from personal liability and agrees to limit recovery from the insurer. Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982); Corn Plus Co-op. v. Cont'l Cas. Co., No. 04-4270, 2007 WL 107676 (D. Minn. Jan. 9, 2007) (Doty, J.).

excess judgment to be entered against the Pattons. Donaldson contends that American Family should be held liable for the full amount of the judgment.

**DISCUSSION**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In Minnesota, an insurer may become liable in excess of its policy limits if it "fails to exercise 'good faith' in considering offers to compromise the claim for an amount within the policy limits." Short v. Dairyland Ins. Co., 334 N.W.2d 384, 387-88 (Minn. 1983) (citing Lange v. Fidelity & Cas. Co., 185 N.W.2d 881 (Minn. 1971)). "This duty to exercise good faith includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured." Id. at 388. The duty of good faith is breached when (1) the insured is clearly liable, (2) the insurer refuses to settle within the policy limits, and (3) the insured is personally exposed to a judgment in excess of the policy limits. Id. Donaldson meets only one of the three of required factors.

4

American Family contends that the first factor—clear liability—is not met because there is a bona fide coverage dispute. When coverage is debatable, the insurer has a right to dispute coverage. Friedberg v. Chubb and Son, Inc., 800 F. Supp. 2d 1020, 1025 (D. Minn. 2011) (Keyes, M.J.). American Family affirmatively disputed coverage when it filed this declaratory judgment action. As the Court noted in denying Defendants' Motions to Dismiss, American Family has legally tenable defenses to coverage under the umbrella policy. In other words, American Family has no "clear liability" at this time under the umbrella policy. The Court agrees that this factor is not met at this time.

The second factor, refusal to settle within policy limits, is plainly met here. American Family argues that they settled within the auto policy limit of $100,000. Although that is true, the policy at issue is the umbrella policy, not the auto policy. It is undisputed that American Family refused to settle within that policy's limit of $1 million. In fact, Donaldson contends that American Family refused to even participate in the arbitration concerning the umbrella policy, which resulted in an award of $1.25 million against the Pattons. The Court therefore finds that this factor is met.

Donaldson cannot meet the third factor, however. In order to maintain a claim for bad faith, the insured must be "personally exposed" to a judgment over the policy limit. Although the arbitration award is indeed over the policy limit, the Pattons are not actually personally subject to the judgment because, as noted, Donaldson released them of any personal liability in the Miller-Shugart agreement. Donaldson argues that even "judgment-

5

proof," i.e., insolvent, insureds are injured by excess judgments because such "a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, and may eventually require him to go through bankruptcy." Lange v. Fidelity and Cas. Co., 185 N.W.2d 881, 885 (Minn. 1971). The problem with this argument is that the Pattons are not "judgment-proof;" rather, Donaldson has expressly released the Pattons from any personal liability and has promised not to attempt to collect any amount of the judgment from them. This means that the Pattons are not exposed to any of the negative consequences noted by the Lange court. The Pattons therefore are not personally exposed to the judgment. Donaldson cannot maintain his counterclaim as a matter of law.

**CONCLUSION**

Donaldson fails to state a claim for bad faith. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Counterclaim (Docket No. 36) is **GRANTED**.

Dated: June 25, 2013

                                           *s/ Paul A. Magnuson*
                                           Paul A. Magnuson
                                           United States District Court Judge