UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

American Family Mutual                                    Civil No. 12-2855 (PAM/FLN)
Insurance Company,

                              Plaintiff,

v.                                                        **MEMORANDUM AND ORDER**

John Martin Donaldson,
Todd Richard Patton, and
Jacob Todd Patton,

                              Defendants.

_____

        This matter is before the Court on the parties' cross-Motions for Summary Judgment.

For the reasons that follow, Plaintiff's Motion is granted and Defendants' Motion is denied.

**BACKGROUND**

        This case arises out of a single-car accident, the relevant facts of which are

undisputed. On April 10, 2011, Defendant Jacob Patton was driving his father's vehicle with

Defendant John Donaldson in the passenger seat. Patton and Donaldson were 18 years old

at the time, and both had been drinking heavily. Patton was speeding through his residential

neighborhood in Lakeville and a neighbor, fearing for his safety, called 9-1-1 to report

Patton's reckless driving. When police tried to pull him over, Patton led them on a high-

speed chase for 80 seconds, at one point reaching 96 miles per hour. (Young Aff. Ex. B

(Docket No. 72-2).) Patton ultimately crashed the car into a tree and Donaldson was severely

injured.  At the time of the accident, Patton had both an auto insurance policy and an

umbrella policy with Plaintiff American Family Mutual Insurance Company through his

father, Defendant Todd Richard Patton.  Patton was ultimately charged with two counts of

criminal vehicular operation.  He has pled not guilty and is awaiting trial.

On March 8, 2012, Donaldson sued the Pattons in Dakota County District Court

alleging negligence.  American Family hired counsel to defend the case.  American Family

also notified the Pattons on November 11, 2011, and July 27, 2012, that it reserved all rights

to contest coverage.  (Duggan Vraa Aff. Ex. 12 (Docket No. 65-2).)  On November 1, 2012,

the eve of trial, American Family requested a continuance on the grounds that a trial would

be unnecessary because Patton was planning to plead guilty and because American Family

was poised to file a declaratory judgment action that would resolve the dispute.  On

November 14, 2012, American Family filed the instant action, seeking a declaration that

there is no coverage under the umbrella policy.

American Family subsequently entered into a Drake-Ryan release with Donaldson in

exchange for the auto policy limit of $100,000.  Under the agreement, the Pattons were

released from all personal liability and the parties agreed that any judgment would only be

collectible under the Patton's umbrella policy.    Donaldson and the Pattons

later executed a Miller-Shugart agreement under which Donaldson agreed to refrain from

collecting any judgment from the Pattons.  (Duggan Vraa Aff. Ex. 17 (Docket No. 65-2) at

6, ¶ 12.)  The agreement further provides that Donaldson "will only seek to satisfy this

judgment from American Family as provided under the personal liability umbrella policy[.]"

2

(<u>Id.</u> at 6, ¶ 11.)

Next, Donaldson and the Pattons engaged in arbitration to determine the amount of damages due to Donaldson under the <u>Miller-Shugart</u> agreement. American Family objected to the <u>Miller-Shugart</u> agreement and refused to participate in the arbitration. On January 2, 2013, the arbitrator issued a $1.25 million award for Donaldson, which is $250,000 in excess of the Pattons' $1 million umbrella policy limit. The parties agree that under the <u>Miller-Shugart</u> agreement, the Pattons cannot be held responsible for the excess judgment.

This Court previously denied Defendants' Motion to Dismiss, after which Defendants filed their Answers and Counterclaims. Donaldson filed a counterclaim for "Third Party Insurance Bad Faith" claiming that American Family acted in bad faith by refusing to settle for the umbrella policy limit of $1 million, which the Court dismissed. The parties' cross-Motions for Summary Judgment are now before the Court.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. <u>Enter. Bank v. Magna Bank</u>, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The interpretation of the language of an insurance contract is usually a legal question for the Court to decide. Murray v. Greenwich Ins. Co., 533 F.3d 644, 648 (8th Cir. 2008); Jenoff, Inc. v. N.H. Ins. Co., 558 N.W.2d 260, 262 (Minn. 1997). In diversity cases such as this, the interpretation of Minnesota-issued insurance policies is a matter of Minnesota law. Murray, 533 F.3d at 648. Under Minnesota law, "[w]hen insurance policy language is clear and unambiguous, 'the language used must be given its usual and accepted meaning.'" Wanzek Constr., Inc. v. Employers Ins. of Wausau, 679 N.W.2d 322, 324 (Minn. 2004) (quoting Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998)).

At issue here is the interpretation of the umbrella policy's language, which differs from that of the underlying auto policy language. Although Defendants attempt to conflate the two, arguing essentially that because there was coverage under the latter policy there should be coverage under the former, "the underlying policy and the umbrella policy are two separate contracts; there is nothing unlawful or improper in defining the scope of coverage differently in each policy." Engelke v. State Farm Fire & Cas. Co., A10-759, 2011 WL 9170 (Minn. Ct. App. Jan. 4, 2011). The Court therefore will focus solely on the relevant umbrella

4

policy language.

## A.     Occurrence/Intentional-Act Exclusion

The parties all seek summary judgment on the issue of whether the facts constitute an occurrence within the meaning of the umbrella policy.  The policy defines "occurrence" as an "accident."  (Vraa Aff. Ex. 16 (Docket No. 65-2) at 2, ¶ 13a.)  The policy also expressly excludes intentional acts defined as "injury caused by or at the direction of any insured even if the actual injury is different than that which was expected or intended from the standpoint of any insured" and injury caused by "fraudulent, criminal, or malicious" conduct.  (Id. at 4, ¶ 11.)  The occurrence requirement and the intentional-act exclusion are "opposite sides of the same coin."  Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 611 (Minn. 2001).  In other words, if the injury was caused by an occurrence (or accident), then it could not have been intentional.  The term "accident" is defined as "an unexpected, unforeseen, or undesigned happening or consequence."  Id. at 609.  The difference between an accident and an intentional act is, not surprisingly, intent.

An insurer may demonstrate intent by showing a specific intent to injure or an inference of intent to injure, the latter of which may be established when the "insured's actions were such that the insured knew or should have known that a harm was substantially certain to result from the insured's conduct."  Id. at 613.  The question here is whether Jacob Patton's decision to drink heavily, drive at high speeds on residential streets, and flee from the police is sufficient to establish the requisite intent, even assuming that Patton did not

intend to crash the vehicle.

In determining whether to infer intent, "the facts of particular importance are those tending to show the likelihood of the harm—the greater the likelihood of the harm occurring, the more reasonable it is to infer intent." R.W. v. T.F., 528 N.W.2d 869, 873 (Minn. 1995). In a strikingly similar case, the Minnesota Court of Appeals held that the intent to injure could be inferred as a matter of law where there insured was intoxicated, drove at high speeds through residential neighborhoods, and fled the police. The court reasoned as follows: "The facts and potential for injury . . . may not occur every time someone engages in this type of behavior, but the serious threat of injury combined with the wanton disregard for safety require that the intent to injure be inferred as a matter of law." Brown v. Am. Nat. Prop. & Cas. Co., A08-1208, 2009 WL 1119166 (Minn. Ct. App. Apr. 28, 2009).

Defendants contend that Patton's conduct should be deemed mere teenage horseplay and that it is clear Patton did not intend to hurt himself or his friend. Defendants point to expert testimony opining that Patton was too intoxicated to form the requisite intent. (Hardin Aff. (Docket No. 69-1) ¶¶ 8-10.) As noted above, intent can be inferred under these circumstances as a matter of law given Patton's wanton disregard for his, Donaldson's, his neighbors, and the police officers' safety. Patton's voluntary intoxication is a key aspect of that determination, not a mitigating factor.[1] Indeed, in the context of insurance coverage

---

[1] Defendants also argue that Patton's conduct was not reckless enough to infer intent because statistics show that only a small percentage of serious auto accidents involve alcohol. (Defs.' Reply Mem. at 3-5.) According to Defendants, this means that Patton's decision to drink heavily, drive erratically at high speeds in a residential neighborhood, and flee the police was

following the insured's intoxicated assault, the Minnesota Supreme Court recognized that

voluntary intoxication strongly supports application of the intentional-act exclusion:

> [W]e are not inclined to create a situation where the more drunk an insured can
> prove himself to be, the more likely he will have insurance coverage. . . .  We
> hold, therefore, that voluntary intoxication may not be used to deny an intent
> to injure one's victim where the circumstances of the assault otherwise compel
> an inference of intent to injure.

Am. Family Mut. Ins. Co. v. Peterson, 405 N.W.2d 418, 422 (Minn. 1987).  Like in Brown,

the Court concludes that Patton's voluntary intoxication and his reckless conduct that

followed are sufficient to infer the intent to injure as a matter of law.

Because the Court concludes that there is no coverage under the umbrella policy based

on the occurrence/intentional act provisions, it need not address American Family's

remaining arguments.

**B.    Estoppel**

Defendants argue that American Family should be estopped from relying on the

intentional-act exclusion because American Family's July 27, 2012, reservation of rights

letter did not disclose the intentional act exclusion as a basis for denying coverage.

Defendants are correct that the July 27 letter is silent on the intentional-act exclusion.

(Duggan Vraa Aff. Ex. 12 (Docket No. 65-2).)   However, American Family's first

reservation-of-rights letter, dated November 10, 2011, clearly references the intentional-act

---

not "substantially likely" to lead to an accident and thus does not qualify as an intentional
act.  This argument is unpersuasive and irresponsible.

exclusion.  (Id.)  And the Amended Complaint plainly alleges that coverage may be denied under the intentional-act exclusion.  (Am. Compl. (Docket No. 17) ¶¶ XXIV, XXIX.)  Under these circumstances, there is no basis on which to conclude that American Family waived, and should be estopped from relying on, the intentional-act exclusion.

**CONCLUSION**

There are no genuine issues of material fact precluding summary judgment in favor of American Family.  Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment (Docket No. 59) is **GRANTED**; and

2.      Defendants' Joint Motion for Summary Judgment (Docket No. 67) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   December 27, 2013

                                                            s/Paul A. Magnuson
                                                            Paul A. Magnuson
                                                            United States District Court Judge